Daniels *v.* Little Rock Packet Company.

Opinion delivered May 3, 1915.

1. Steamboats—lease—abatement of rent.—Where a contract for the lease of a steamboat provided that no rent should be paid in the event of the occurrence of an accident to the steamboat, that would destroy the boat entirely, or so injure her that she would have to be placed on the dock for repairs, *held*, the lessee would not be entitled to an abatement of rent, because of the presence of dangerous ice floes in the river or on account of other conditions dangerous to navigation, during a portion of the life of the lease.

2. Steamboats—lease—rent.—The lessee of a steamboat will not be entitled to an abatement of the rent provided therefor in the contract of lease, on account of conditions arising rendering the operation of the boat impractical, which are not provided for in the lease.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellee (plaintiff below) sued appellant Daniels, alleging that it entered into a contract with him whereby it leased to him a certain steamboat for a period of ninety days; that Daniels agreed to pay for the use of the boat $300 for the first thirty days, $400 for the second thirty days, and $400 for the third thirty days, making a total of $1,100; that Daniels entered into a bond, with appellant E. O. Bagley as a surety, in the sum of $1,500 to secure these payments to the appellee; that the sum of $50 had been paid thereon; and appellee prayed judgment against appellants for the balance of $1,050.

Appellants answered and made their answer a cross-complaint. They set up that under the contract it was the duty of the appellee to bear the expense of the necessary repairs and equipment; that appellant Daniels had expended a large sum of money in making necessary repairs and furnishing necessary equipment for the steamer, at the request of appellee; that during fifteen days of the time covered by the contract there was a floe of ice in the river where the boat was plying that made it dangerous for navigation; that appellant Daniels notified appellee's manager of this dangerous condition, and, at the request of appellee, through its manager, he (Daniels) kept the boat tied up for fifteen days upon the promise of appellee's manager that there would be no charge for the boat during that time. They further alleged that when Daniels hired the steamer one of her rudders was unsound and that while being operated by him under the contract the same gave way; that appellee's manager was notified of that fact and directed appellant to have a new rudder supplied at the expense of appellee; that the rent due under the contract was to cease during the time that the rudder was being repaired; that it required ten days to do this work, and appellants were entitled to a deduction of ten days on that account; that Daniels had expended the sum of $620 in taking care of the boat while the ice floe was on and while same was undergoing repairs, which was justly due him by the appellee; that the sum of $233.35 was the amount that should be deducted on the contract price during the ice floe and the time that the rudder was being repaired. They set up these matters as a counterclaim against the appellee and prayed judgment over in the sum of $1,067.25.

The appellee introduced the lease signed by the appellant Daniels, the execution of which was not in issue. The lease contained, among other provisions, the following:

"The party of the first part (appellee) assumes all liability and risk that is covered by the ordinary marine hull and fire insurance policies, and storms and explo-

sions, and the extraordinary breakage of machinery, such as shaft, cylinders, collapsing of flues and such other accidents as may cause said steamer to go on the dock. The party of the second part (appellant) assumes and agrees to keep said steamer in as good order and condition as when delivered to him, except as aforesaid, and the dangers of river navigation, fire and unavoidable accidents * * *. And it is further mutually agreed that in case of the sinking, burning, or explosion or partial destruction from any cause whatsoever of the said boat, all charter money so promised to be paid is to cease at the time of said accident, and the party of the second part is to notify the party of the first part promptly of such accident and remain in charge of the steamer or wreck until party of the first part or their authorized agent can reach said boat or wreck."

The testimony on the part of the appellee tended to to show that it demanded of the appellant Daniels the sum of $1,013.34 as the balance due under the lease contract, after deducting the sum of $50 as a cash payment. Appellants introduced evidence tending to sustain the allegations of the counterclaim of appellant Daniels as to the items of expenditures for repairs and equipping the boat and for lost time.

The court, on its own motion, after defining the issues, instructed the jury "to find for the defendant for the amount of actual and necessary expenses incurred in equipping the boat and making the necessary and permanent repairs and for the ten days lost time on account of making and installing the new rudder, at $13.33 per day, or $133.33;" and further "if you find from the evidence that the plaintiff is indebted to the defendant for salary for November and December, 1910, and January, 1911, you should find for the defendant on his cross-complaint for any sum you may find due him for salary."

Among other prayers for instructions, the appellants asked the following:

"2. You are further instructed that if you find from the evidence that defendant, Daniels, in January, 1912,

encountered a dangerous floe of ice in the river, making it dangerous for the boat to be operated, and that he reported this condition to plaintiff's manager and was instructed by said manager to tie said boat up until such dangerous condition had abated, then defendant is entitled to have deducted from the charter fee the fifteen days time such boat was so tied up, if you find that it was tied up fifteen days, at the rate of $10 per day, or a total deduction of $150 on this account.''

"4.   If you find from the evidence that during twenty-five days of the time covered by the lease or charter party that the boat was tied up on account of ice in the river and for making repairs to the rudder, or otherwise, and that it was so tied up with the knowledge, and by the direction of plaintiff, or its manager, then you are instructed that defendant, under said contract or charter party would be entitled to recover from plaintiff, the actual and necessary expenses incurred by him in taking care of said boat during said time.''

The court refused to grant these prayers, and appellants duly excepted to the court's ruling. The jury returned a verdict in favor of the appellee in the sum of $167.77, and from the judgment entered in its favor for that sum this appeal has been duly prosecuted.

*Murphy & McHaney,* for appellant.

Instruction 2 should have been given for the reason that, even if the tie up was not authorized by the terms of the charter party, it was authorized and required by the fact that it occurred under, and in accordance with, the direction or request of appellee's manager. For the meaning of the phrase "to go on the dock," see 9 Ohio, 165; 58 U. S. 426, 15 L. Ed. 118.

Appellee should be held to pay the expense of keeping and caring for the boat during the fifteen days time lost on account of the extraordinary ice floe in the river, and also during the time of repairing the rudder and shaft, hence instruction 4 requested by appellant should have been given.

*Terry, Downie & Streepey,* for appellee.

Appellant places a strained construction upon the phrase "to go on the dock." It is apparent from the writing and the language employed that the parties had in mind the going on a dry dock for repairs to the boat, which repairs were in the hull.

Appellant would not be entitled to damages on account of keeping the boat during the time it was tied up.

Wood, J., (after stating the facts). (1) The court did not err in refusing appellant's prayers for instructions numbers 2 and 4. The giving of prayer No. 2 would have permitted the jury to find that appellant Daniels was not liable for the rents under the lease contract for a period of fifteen days during a dangerous floe of ice in the river, if the manager of the appellee instructed the appellant to tie up said boat during such time. This would have been varying the terms of the written contract by oral testimony. The written contract only relieved appellants of liability in case of "extraordinary breakage of machinery, such as shafts, cylinders, collapsing of flues, and such other accidents as may cause said steamer to go on the dock;" and in case of "storms, explosions," fire, etc., that resulted in the destruction of the boat or such injury to her as would put her out of use; or, in other words, those accidents that would destroy the boat entirely or so injure her that she would have to be placed on the dock for repairs. The contract did not contemplate a deduction for rents during such time as it might be dangerous to navigate the river on account of ice floes or some other dangerous conditions. Nothing short of some physical injury to the vessel, such as mentioned in the contract, would have relieved appellant Daniels from the payment of rents during such period as the boat was in that condition.

Prayer No. 4 for instruction would have permitted the jury to deduct from the amount due appellee any sums expended by appellant Daniels for taking care of the boat during the time that she was tied up on account of the ice, and during the time repairs were being made on her rudder. Such expenses were not in contempla-

tion of the written contract, and the court therefore did not err in rejecting this prayer.

(2) The court allowed the jury to find for the appellant Daniels the necessary expenses incurred by him in equipping the boat and in repairing same, and for the time lost while the rudder was being installed. In so instructing the jury, the court certainly construed the contract as favorably to the appellant Daniels as he was entitled. The court by its ruling upon the instructions sought to narrow the issue to the terms of the written contract which was correct.

The judgment is therefore affirmed.